Case 3:18-cv-00058-NKM-JCH   Document 1   Filed 07/26/18   Page 1 of 12
Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 26, 2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

| | |
|---|---|
| STEWART TITLE GUARANTY COMPANY, | * |
| Plaintiff, | * |
| v. | Case No: 3:18-cv-00058 |
| CLOSURE TITLE & SETTLEMENT COMPANY LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

COMES NOW, Plaintiff, Stewart Title Guaranty Company ("Stewart"), by counsel, files this Complaint against Defendant, CloSure Title & Settlement Company LLC ("CloSure Title"), and in support thereof, states as follows:

**JURISDICTION**

1. Plaintiff Stewart Title is a corporation organized under the laws of Texas, with its principal place of business located at 1980 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

2. Defendant CloSure Title is limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business located in the City of Charlottesville, Virginia, at 3510 Remson Court, Suite 401, Charlottesville, Virginia 22901.

3. Upon information and belief, the members of CloSure Title are Karla H. Floyd, Linda Maxwell and Of Charlottesville, LLC.

4. Upon information and belief, Karla H. Floyd is a resident of Virginia.

5. Upon information and belief, Linda Maxwell is a resident of Virginia.

6. Upon information and belief, the members of Of Charlottesville, LLC are Mary Preston Newton, Robert S. Wilson, Francis P. Boyle, Kimberly Armstrong, Elizabeth Cobb, and Walter E. Plitt IV.

7. Upon information and belief, Mary Preston Newton is a resident of Virginia.

8. Upon information and belief, Robert S. Wilson is a resident of Virginia.

9. Upon information and belief, Francis P. Boyle is a resident of Virginia.

10. Upon information and belief, Kimberly Armstrong is a resident of Virginia.

11. Upon information and belief, Elizabeth Cobb is a resident of Virginia.

12. Upon information and belief, Walter E. Plitt IV is a resident of Oregon.

13. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332, as the matter in controversy involves a dispute between citizens of different states, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

14. Venue is proper in this district and division pursuant to 28 U.S.C. §1391(b) because CloSure Title is located in the City of Charlottesville, Virginia.

15. This Court has personal jurisdiction over CloSure Title pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) as CloSure Title transacts business within the Commonwealth of Virginia.

## INTRODUCTION

16. Although this case involves complicated real estate transactions, the allegations are simple. CloSure Title issues title insurance policies underwritten by Stewart. In the event that Stewart is required to make payment under a policy issued by CloSure and underwritten by Stewart as a result of of CloSure's error and omissions, CloSure is required to indemnify Stewart. In this

case, CloSure issued two lender's title policies underwritten by Stewart that insured that each insured lender would be granted a first priority lien on a parcel of real property in Charlottesville. In fact, because the granting party named in the deed of trust on each loan did not match the name on the deed to the property, a subsequent lender was able to assert a first priority lien on each of the properties, and Stewart was required to make payment under the insurance policies. Because Stewart was required to make payment under the insurance policies as a result of the errors and omissions of CloSure Title, CloSure Title is required to indemnify

## BACKGROUND

17. On or about May 17, 2007, Stewart Title and CloSure Title entered into a "Title Insurance Underwriting Agreement (the "Agreement"). The Agreement, with certain limitations, authorizes CloSure Title to issue title insurance policies underwritten by Stewart Title as a part of CloSure Title's business of closing real estate transactions in Virginia. A redacted copy of the Agreement is attached as **Exhibit A.**

18. CloSure Title's duties under the Agreement include, but are not limited to:

   a. Issuing title policies according to recognized underwriting practices and the rules and instructions given by Stewart Title;

   b. Issuing title policies based on a written report of title resulting from a complete search and examination of the public records, surveys, and inspections relevant to the insurance afforded by such policies;

   c. Issuing title policies which correctly reflect the status of title as of the date and time of said policy, with appropriate exceptions for liens, defects, encumbrances and/or objections;

    d. Obtaining Stewart Title's approval for the use of any outside attorney or non-attorney to search or review title; and

    e. Taking appropriate exception in title policies for liens, defects, encumbrances and/or objections disclosed by a complete search and examination of title.

19. In the event that Stewart Title suffered a loss due to CloSure Title's errors, omissions, and deviations from the terms of the Agreement or failing to take exception to title defects in a title policy, CloSure Title is required to indemnify, save and hold harmless Stewart Title for all attorneys' fees, costs, expenses, liability, damage and loss arising from said deviation.

## THE LOT C3 TRANSACTION

20. On or about March 5, 2015, BD Land Properties, LLC ("BD Land") sold certain real property located in Albemarle County, which included the following property:

> All that certain lot or parcel of land situated in the County of Albemarle, Virginia, on Willow Lake Drive, containing .025 acres, more or less, shown as Lot C3 of Willow Lake View Subdivision, on a plat of Roger W. Ray & Assoc., Inc. dated July 5, 2012, as later revised, and recorded in the Clerk's Office in Deed Book 4334, page 70 ("Lot C3").

A true and correct copy of the deed conveying Lot C3 is attached as **Exhibit B.**

21. The purchaser of Lot C3 was the C-3 Willow Lake Land Trust U/A Dated 12/29/14 (the "C3 Trust").

22. In order to fund construction costs on Lot C3, Lot C3 Willow Lake Series, a Series of Friendly Rehab Funds, a Virginia business trust (the "Friendly Rehab Lot C3 Lending Entity"), lent $240,000.00 with the intention that it would be granted a first priority deed of trust on Lot C3.

23. As part of the purchase price for Lot C3, BD Land was granted what was intended to be a second priority deed of trust on Lot C3 in the amount of $57,383.89.

24. CloSure Title conducted the closing on the sale of Lot C3, and in connection therewith, CloSure Title issued a lender's title policy underwritten by Stewart Title to the Friendly Rehab Lot C3 Entity in the amount of $240,000 (the "Lot C3 Policy"). A true and correct copy of the Lot C3 Policy is attached as **Exhibit C.**

25. On March 6, 2015, CloSure Title recorded a deed of trust for the benefit of Friendly Rehab in the land records of Albemarle County, Virginia (the "Friendly Rehab Lot C3 DOT"). A true and correct copy of the Friendly Rehab Lot C3 DOT is attached as **Exhibit D.**

26. Although the Friendly Rehab Lot C3 DOT was intended to encumber Lot C3, the Friendly Rehab Lot C3 DOT erroneously listed the grantor as JB Rivers Properties, LLC ("JB Rivers"), instead of the C3 Trust, which was the entity that purchased Lot C3.

27. Immediately sequentially thereafter, CloSure Title recorded a deed of trust for the benefit of BD Land in the land records of Albemarle County, Virginia (the "BD Land Lot C3 DOT"). The BD Land Lot C3 DOT correctly listed the C3 Trust as the granting party. A true and correct copy of the BD Land Lot C3 DOT is attached as **Exhibit E.**

28. On or about April 3, 2015, Richmond Masonry Company ("RMC") recorded a deed of trust in the face amount of $240,000.00 encumbering Lot C3 (the "RMC Lot C3 DOT"). The RMC Lot C3 DOT correctly identified the C3 Trust as the grantor. A true and correct copy of the RMC Lot C3 DOT is attached as **Exhibit F.**

## THE LOT C6 TRANSACTION

29. On or about June 17, 2015, BD Land again sold real property located in Albemarle County, which included the following property:

> All that certain lot or parcel of land situated in the County of Albemarle, Virginia, on Willow Lake Drive, containing .036 acres, more or less, shown as Lot C6 of Willow Lake View Subdivision, on a plat of Roger W. Ray & Assoc., Inc. dated July 5, 2012, as later revised, and recorded in the Clerk's Office in Deed Book 4334, page 72 ("Lot C6," and collectively with Lot C3, the "Lots").

A true and correct copy of the deed conveying Lot C6 is attached as **Exhibit G.**

30. The purchaser of Lot C6 was the C-6 Willow Lake Land Trust U/A Dated 12/29/14 (the "C6 Trust").

31. In order to fund construction costs on Lot C6, (the "Friendly Rehab Lot C6 Lending Entity," and collectively with the Friendly Rehab Lot C3 Lending Entity," "Friendly Rehab") lent $240,000.00 with the intention that it would be granted a first priority deed of trust on Lot C6.

32. As part of the purchase price for Lot C6, BD Land was granted what was intended to be a second priority deed of trust on Lot C6 in the amount of $57,457.35.

33. CloSure Title conducted the closing on the sale of Lot C6, and in connection therewith, CloSure Title issued a lender's title policy underwritten by Stewart Title to the Friendly Rehab Lot C6 Lending Entity in the amount of $240,000.00 (the "Lot C6 Policy"). A true and correct copy of the Lot C6 Policy is attached as **Exhibit H.**

34. On June 18, 2015, CloSure Title recorded a deed of trust for the benefit of Friendly Rehab in the land records of Albemarle County, Virginia (the "Friendly Rehab Lot C6 DOT"). A true and correct copy of the Friendly Rehab Lot C6 DOT is attached as **Exhibit I.**

35. Although the Friendly Rehab Lot C6 DOT was intended to encumber Lot C6, the Friendly Rehab Lot C6 DOT again erroneously listed the grantor as JB Rivers, instead of the C6 Trust, which was the entity that purchased Lot C6.

36. Immediately sequentially thereafter, CloSure Title recorded a deed of trust for the benefit of BD Land in the land records of Albemarle County, Virginia (the "BD Land Lot C6 DOT"). A true and correct copy of the BD Land Lot C6 DOT is attached as **Exhibit J.** The BD Land Lot C6 DOT correctly listed the C6 Trust as the granting party.

37. On or about September 3, 2015, and September 18, 2015, RMC recorded, respectively, a deed of trust and a corrective deed of trust, both in the face amount of $240,000.00, encumbering Lot C6 (collectively, the "RMC Lot C6 DOT"). A true and correct copy of the RMC Lot C6 DOT is attached as **Exhibit K.** The RMC Lot C6 DOT, as corrected, correctly identified the C6 Land Trust as the grantor.

## FORECLOSURE SALE OF LOT C3

38. In August 2016, the Friendly Rehab Lot C3 Lending Entity commenced foreclosure proceedings against Lot C3, and scheduled a sale for September 22, 2016. In connection therewith, Friendly Rehab sent notice of the anticipated foreclosure sale to RMC.

39. In August 2016, RMC commenced foreclosure proceedings against Lot C3, and scheduled a sale for September 27, 2016.

40. On September 13, 2016, counsel for RMC sent a letter to counsel for Friendly Rehab, putting Friendly Rehab on notice that the Friendly Rehab Lot C3 Deed of Trust was defective (the "RMC Letter"). A true and correct copy of the RMC Letter is attached as **Exhibit L.**

41. After receipt of the RMC Letter, the Friendly Rehab Lot C3 Lending Entity canceled its scheduled foreclosure sale.

42. On September 19, 2016, counsel for Friendly Rehab made a claim against the Lot C3 Policy and the Lot C6 Policy.

43. Thereafter, Stewart engaged the firm of Parker, Pollard, Wilton & Peaden, P.C. to represent Friendly Rehab.

44. Friendly Rehab, through Parker, Pollard, Wilton & Peaden, P.C., sought to obtain an injunction prohibiting RMC from proceeding with its foreclosure sale. However, Friendly Rehab was unable to obtain such an injunction.

45. On September 27, 2016, RMC conducted a foreclosure sale on Lot C3.

46. The purchaser at the foreclosure sale of Lot C3 was Biringer Builders, Inc., ("Biringer"), an affiliate of RMC.

## THE ALBEMARLE COUNTY LITIGATION

47. On October 11, 2016, Friendly Rehab, through Parker, Pollard, Wilton & Peaden, P.C., filed a complaint in the Circuit Court for Albemarle County, Virginia, commencing case number CL16000754-00 (the "Albemarle County Lawsuit"). A true and correct copy of the complaint commencing the Albemarle County Lawsuit is attached as **Exhibit M.**

48. The Albemarle County Lawsuit named as defendants: (1) JB Rivers, (2) the trustees of the C3 Trust and the C6 Trust; (3) BD Land and the trustees under the BD Land Lot C3 DOT and the BD Land Lot C6 DOT; (4) RMC and the Trustees of the RMC Lot C3 DOT and the RMC Lot C6 DOT; and (5) Biringer.

49. In the Albemarle County Lawsuit, Friendly Rehab sought (A) a declaration that Biringer held title to Lot C3 subject to the constructive trust for the benefit of the Friendly Rehab Lot C3 Lending Entity; and (B) a declaration that the C6 Trust held title to Lot C6 subject to a first priority constructive trust for the benefit of the Friendly Rehab Lot C6 Lending Entity.

50. BD Land, the trustees under BD Land Lot C3 DOT and the BD Land Lot C6 DOT, RMC, the Trustees of the RMC Lot C3 DOT and the RMC Lot C6 DOT, and Biringer each filed answers to the Albemarle County Lawsuit.

51. At some point, Richmond Masonry Properties, LLC ("RMP"), another affiliate of RMC, was substituted as the purchaser at RMC's foreclosure sale. On October 13, 2016, the Trustees under the RMC Lot C3 DOT recorded a deed conveying Lot C3 to RMP.

52. On April 7, 2017, RMP filed a consensual motion to intervene in the Albemarle County Lawsuit, and an answer and counterclaim. In its counterclaim, RMP sought to quiet title to Lot C3 and sought a declaratory judgment that Friendly Rehab had no interest in Lot C3. A true and correct copy of RMP's answer and counterclaim in the Albemarle County Lawsuit is attached as **Exhibit N.**

53. After significant litigation, Friendly Rehab was able to reach a global resolution of the Albemarle County Lawsuit.

54. As a result of such resolution, on January 8, 2018, the Circuit Court for Albemarle County entered a consensual Final Order (1) determining as a matter of law that the naming of JB Rivers as the grantor in the Friendly Rehab Lot C3 DOT and Friendly Rehab Lot C6 DOT was a scrivener's error; (2) quieting title to Lot C3 in the name of the Friendly Rehab Lot C3 Lending Entity, subject to the BD Land Lot C3 DOT; and (3) quieting title to Lot C6 in the name of the C6 Land Trust, subject to, in first priority, a constructive trust in favor the Friendly Rehab Lot C3 Lending Entity which attached to Lot C6 *nunc pro tunc* as of June 18, 2015, on terms substantively identical to the Friendly Rehab Lot C6 DOT; in second priority, the lien of the BD Land Lot C6 DOT; and in third priority, the lien of the RMC Lot C6 DOT. A true and correct copy of the Final Order is attached as **Exhibit O.**

55. In connection with the resolution, Stewart Title funded a settlement in the amount of $120,000.00 as an inducement for RMC to enter into the Final Order.

56. Stewart Title paid attorneys' fees and expenses of $72,786.98 for the representation of Friendly Rehab in the Albemarle County Lawsuit.

## Count I
(Breach of Contract)

57. Stewart Title incorporates all prior paragraphs by reference herein.

58. The Agreement forms a valid and enforceable contract between Stewart Title and CloSure Title. CloSure Title's duties under the Agreement include:

   a. Issuing title policies according to recognized underwriting practices and the rules and instructions given by Stewart Title; and

   b. Issuing title policies which correctly reflect the status of title as of the date and time of said policy, with appropriate exceptions for liens, defects, encumbrances and/or objections;

59. CloSure Title materially breached its obligations under the Agreement by:

   a. By error or omission, issuing a lender's title policy in which the owner of Lot C3 (the C3 Trust) was not the same entity as the entity listed in the Friendly Rehab Lot C3 DOT (JB Rivers) as the entity granting a lien to the Friendly Rehab Lot C3 Lending Entity;

   b. By error or omission, issuing a lender's title policy in which the owner of Lot C3 (the C6 Trust) was not the same entity as the entity listed in the Friendly Rehab Lot C6 DOT (JB Rivers) as the entity granting a lien to the Friendly Rehab Lot C6 Lending Entity;

    c. By error or omission, causing the Friendly Rehab Lot C3 DOT to be recorded in the name of a grantor (JB Rivers) the was not the owner of Lot C3;

    d. By error or omission, causing the Friendly Rehab Lot C6 DOT to be recorded in the name of a grantor (JB Rivers) the was not the owner of Lot C6;

    e. Failing to adhere to recognized underwriting practices when issuing the Lot C3 Policy and the Lot C6 Policy;

    f. Failing to adhere to the instructions and warnings contained in the bulletins and notices issued by Stewart Title;

    g. Failing to make a reasonable inquiry into the status of title and the *bona fides* of the Friendly Rehab Lot C3 DOT and Friendly Rehab Lot C6 DOT, given the clear defects in same.

60. As a direct and proximate result of CloSure Title's material breaches of the Agreement, Stewart Title has suffered actual and compensable damages, including the cost of defending Friendly Rehab's title, compensating Friendly Rehab for the damages it suffered due to the failure to name the proper grantor in Friendly Rehab Lot C3 DOT and Friendly Rehab Lot C6 DOT, attorneys' fees, and other expenses.

61. Pursuant to the Agreement, CloSure Title is required to indemnify and hold harmless Stewart Title from any loss or damage suffered due to the aforementioned breaches.

62. Despite Stewart Title's demand for indemnification, CloSure Title has failed to reimburse Stewart Title for its loss and damages suffered as a result of Closure Title's aforementioned breaches.

WHEREFORE, Stewart Title Guaranty Company demands judgment against CloSure Title & Settlement Company LLC in the sum of $192,786.98, plus interest, the costs of this action, and reasonable attorneys' fees, to be determined at trial.

Dated: July 26, 2018　　　　　　　　　　　STEWART TITLE GUARANTY COMPANY

/s/ Craig M. Palik
Craig M. Palik (VSB # 45728)
Justin P. Fasano (VSB # 75983)
McNamee, Hosea, Jernigan, Kim,
Greenan & Lynch, P.A.
301-441-2420
301-982-9450 (facsimile)
*Attorneys for Plaintiff*