CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
01/03/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEWART TITLE GUARANTY CO., *Plaintiff*, v. CLOSURE TITLE & SETTLEMENT CO., LLC, *Defendant*. | CASE NO. 3:18-cv-00058 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Closure Title & Settlement Company's ("Closure Title") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (Dkt. 6). Closure Title issues title insurance policies underwritten by Plaintiff Stewart Title Guaranty Company ("Steward Title"). Underlying errors in title policies issued by Closure Title sparked litigation that resulted in a settlement funded by Stewart Title. Stewart Title filed suit against Closure Title in this Court for breach of contract. Closure Title now moves to dismiss, arguing that (1) the Court cannot exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties' agreement and Virginia's voluntary payment doctrine preclude Stewart Title from recovering over $75,0000 in damages; and (2) Stewart Title fails to state a claim for breach of contract under Virginia law.

Both arguments fail. Closure Title has not met its burden of establishing, to the point of legal certainty, that Stewart Title cannot recover damages in excess of $75,000. Thus, the Court finds that the amount in controversy is sufficient for it to exercise diversity jurisdiction. Moreover, Stewart Title pleads sufficient factual allegations to state a claim for breach of contract. Accordingly, the motion to dismiss will be denied in full.

## I. LEGAL STANDARDS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) tests a district court's subject matter jurisdiction. Typically, the Court must accept as true all material factual allegations in the complaint and construe the complaint in the plaintiff's favor. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). However, when the factual basis for subject matter jurisdiction is challenged, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment," but the "moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court must take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

## II. FACTS AS ALLEGED

Plaintiff Stewart Title is a title insurance underwriter incorporated in Texas, with its principal place of business in Houston, Texas. Defendant Closure Title is a limited liability company organized in Virginia, with its principal place of business in Charlottesville, Virginia. (Complaint ¶¶ 1–2). Closure Title specializes in closing real estate transactions in Virginia.

In May 2007, Stewart Title and Closure Title entered into a Title Insurance Underwriting

Agreement ("the Agreement") authorizing Closure Title to issue title insurance policies underwritten by Stewart Title. (*Id*. ¶ 17). Under the Agreement, Closure Title has several duties, including (but not limited to) issuing title policies "according to the recognized underwriting practices"; issuing title policies "based on a written report of title resulting from a complete search and examination of the public records, surveys, and inspections"; and taking "appropriate exception in title policies for liens, defects, encumbrances and/or objections disclosed by a complete search and examination of title." (*Id*. ¶ 18(a)-(e); dkt. 1-2 at 1–2, 4).

This suit stems from two real estate transactions in Albemarle County, Virginia: the "Lot C3" transaction and the "Lot C6" transaction. On March 5, 2015, BD Land Properties, LLC ("BD Land") sold "Lot C3" to Willow Lake Land Trust ("Willow Lake"). (Complaint ¶¶ 20–21). On June 17, 2015, BD Land sold "Lot C6" to Willow Lake. (*Id*. ¶ 29–30). To fund construction costs for both lots, Willow Lake secured two $240,000 loans from Friendly Rehab Funds ("Friendly Rehab"), a Virginia-based private real estate lending business, in exchange for a first priority deed of trust in each lot. (*Id*. ¶ 22, 31).

Closure Title conducted the closing for both transactions, each time issuing a lender's title policy underwritten by Stewart Title to Friendly Rehab. (*Id*. ¶ 24, 33). Following both transactions, Closure Title recorded a deed of trust for the benefit of Friendly Rehab, but each deed erroneously listed the grantor as JB River Properties, instead of Willow Lake. (*Id*. ¶ 26, 34–35). After Closure Title recorded these deeds, two deeds of trust were subsequently filed for each lot, one by Closure Title for the benefit of BD Land and the other by Richmond Masonry Company ("Richmond Masonry") for its own benefit. (*Id*. ¶¶ 27–28, 36–37). All four of *these* deeds correctly listed Willow Lake as the grantor. (*Id*.).

Approximately one year after the sale of Lot C3, Friendly Rehab commenced foreclosure

3

proceedings against Lot C3 and scheduled a foreclosure sale. (*Id*. ¶ 38). Richmond Masonry did the same and sent Friendly Rehab a notice that its deed of trust was defective. (*Id*. ¶¶ 39–40). After receiving this notice, Friendly Rehab cancelled its foreclosure sale and, with the aid of legal counsel funded by Stewart Title, moved unsuccessfully for an injunction prohibiting Richmond Masonry from proceeding with its foreclosure sale. (*Id*. ¶¶ 41–44). In late September 2016, Biringer Builders, Inc., an affiliate of Richmond Masonry, purchased Lot C3 at Richmond Masonry's foreclosure sale. (*Id*. ¶¶ 45–46).

A month later, in October 2016, Friendly Rehab—again using legal counsel funded by Stewart Title—filed suit in Albemarle County Circuit Court seeking a declaration that (1) Biringer Builders held title to Lot C3 subject to a constructive trust for the benefit of Friendly Rehab, and (2) Friendly Rehab held title to Lot C6. (*Id*. ¶ 49). After two years of litigation, the case settled. The Circuit Court entered a consensual final order determining as a matter of law that (1) the errors in both the Lot C3 and Lot C6 deeds of trust were "scrivener's error[s]" committed by attorneys employed by Friendly Rehab; (2) Friendly Rehab held title to Lot C3 subject to BD Land's deed; and (3) Friendly Rehab held title to Lot C6 subject to various constructive trusts and liens. (*Id*. ¶ 54). Stewart Title funded a settlement in the amount of $120,000 and paid $72,786.98 in attorneys' fees. (*Id*. ¶¶ 55–56).

Stewart Title has now sued Closure Title for breach of contract, alleging that Closure Title breached its duties under the Agreement by issuing lender's title policies in which the owner of the C3 and C6 lots did not match the owner listed on Friendly Rehab's two deeds of trust. As a result of these alleged breaches, Stewart Title asserts that it suffered $192,786.98 in losses due to the Albemarle County litigation. Stewart Title alleges that, under the Agreement, Closure Title is obligated to indemnify Stewart Title for these losses. (*Id*. ¶¶ 57–62).

4

### III. ANALYSIS

Closure Title moves to dismiss under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Applying Virginia law to its interpretation of the parties' Agreement,[1] the Court addresses each motion to dismiss in turn.

#### A. Rule 12(b)(1) – Whether the Court Has Subject Matter Jurisdiction

Closure Title argues that Stewart Title is only permitted to claim $5,000 in damages under the Agreement, and that Virginia's voluntary payment doctrine precludes the recovery of Stewart Title's non-obligatory litigation expenses. For both reasons, Closure Title contends the amount in controversy falls below the $75,000 threshold established by 28 U.S.C. § 1332.[2]

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638

---

[1] The parties did not brief any choice of law issue and consistently cite Virginia law as governing interpretation of the Agreement. The Agreement does not appear to include any choice of law provision. (Dkt. 1-1). Since this is a diversity action, the Court applies the choice of law principles of Virginia, the state in which the Court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). "Under Virginia choice of law rules, the law of the place of performance governs contract payment and performance issues." *Wood v. Symatec Corp.*, 872 F. Supp. 2d 476, 481 (E.D. Va. 2012). *See also Erie Ins. Exchange v. Shapiro*, 450 S.E.2d 144, 145 (Va. 1994) (noting this principle). "A contract breach is a performance issue and thus, is regulated by the law of the place of performance." *Sneed v. Am. Bank Stationary Co., Div. of ABS Corp.*, 764 F. Supp. 65, 66–67 (W.D. Va. 1991) (citing Supreme Court of Virginia precedent). Here, the alleged breach—Closure Title's failure to comply with industry standards by issuing title policies without catching errors in the underlying deeds—took place in Virginia, where Closure Title is organized and has its principle place of business. Thus, Virginia law applies to this breach of contract claim.

[2] The facts as alleged by Stewart Title establish complete diversity of citizenship, and Closure Title does not dispute that the parties are completely diverse. (Complaint ¶¶ 1–12).

(4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Defendants seeking dismissal of diversity suits for lack of a sufficient amount in controversy "shoulder a heavy burden" of demonstrating that the "legal impossibility" of the claimed recovery is "so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id*. Where, as here, a defendant contends "that the jurisdictional allegations of the complaint" are "not true," a district court should not apply a "presumption of truth" to the complaint's jurisdictional allegations and can "weigh the evidence" to decide whether it has subject matter jurisdiction. *24th Senatorial Dist. Repub. Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016). But where the "jurisdictional facts are intertwined with the facts central to the merits of the complaint, a presumption of truthfulness should attach to the plaintiff's allegations." *Id*.

The Court now turns to Closure Title's two arguments that the amount in controversy is insufficient for the Court to exercise diversity jurisdiction over this case.

### 1. The Agreement's Limitation of Liability Clause

Closure Title first argues that "Plaintiff cannot recover more than $5,000" under limitation of liability clauses in the parties' Agreement.[3] (Dkt. 7 at 5). The Agreement contains two relevant clauses: first, a clause stating that Closure Title "shall be liable to [Stewart Title] for the first $2,500" of any "loss under a title policy issued pursuant" to the Agreement, unless the loss is due to Closure Title's "negligence or fraud," (dkt. 1-2 at 4); and second, a clause providing that Closure Title will be liable for the full amount of losses attributable to Closure Title's "fraud or intentional act or omission" or "negligence." (*Id.*). Closure Title contends that

---

[3] Under Virginia law, a limitation of liability clause is enforceable so long as it does not contravene public policy. *See All Business Solutions, Inc. v. NationsLine, Inc*. 629 F.2d 553, 559–60 (W.D. Va. 2009); *Krocinec v. Public Storage, Ltd. I v. Wachovia Bank, N.A.*, 489 F. Supp. 2d 555, 558–59 (E.D. Va. 2007) (citing Virginia cases establishing this point of law).

6

Stewart Title has made no "claim for fraudulent, intentional, or negligent conduct,"[4] and thus is only entitled to recover $2,500 per claim. (Dkt. 7 at 5). Since there are "arguably" two claims here (stemming from the two policies issued for Lot C3 and Lot C6), Closure Title argues that "the maximum amount Stewart Title can recover is $5,000." (*Id.*).

Stewart Title responds that the Agreement's limitation of liability clauses do not preclude its claim for $192,786.98 in damages because the basis for its breach of contract claim is Closure Title's negligent "error[s] [and] omission[s]" in failing to "adhere to recognized underwriting practices" as required under the Agreement. (Dkt. 12 at 5). Although the complaint does not contain the word "negligence," Stewart Title contends that this word should be defined broadly to encompass non-compliance with "industry standards," which Stewart Title expressly alleges in the complaint. (*Id.* at 7). Thus, Stewart Title contends that the limitation of liability clauses do not apply, making the amount in controversy well over $75,000.

The Fourth Circuit has not addressed whether a district court should consider a limitation of liability clause when assessing the amount in controversy requirement for purposes of a Rule 12(b)(1) motion. *See Microstrategy Servs. Corp. v. Openrisk, LIC*, No. 1:14-cv-1244, 2015 WL 3774485, at *4 (E.D. Va. June 17, 2015) (declining to rule on that question "[w]ithout any guidance from the Fourth Circuit"). District courts in this circuit have reached different conclusions about whether limitation of liability clauses can be considered at this stage. *See id.* (citing divergent district court opinions). Moreover, other circuits are split on this question. *Compare Pratt Central Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 354 (7th Cir. 1995) (holding that where contractual liability cap is lower than jurisdictional amount, the case

---

[4] Stewart Title concedes that the complaint nowhere alleges that Closure Title engaged in fraud or any intentional acts or omissions. However, Stewart Title argues that the complaint sufficiently alleges negligence (*i.e.,* non-compliance with underwriting industry standards) such that the Agreement's limitation of liability clauses do not apply. (Dkt. 12 at 5).

must be dismissed under Rule 12(b)(1)), *with Zacharia v. Harbor Island Spa, Inc*., 684 F.2d 199, 202 (2d Cir. 1982) (holding that contractual liability caps cannot be considered under Rule 12(b)(1), since contractual damages caps are "affirmative defenses").

Here, for two reasons, the Court need not take a definitive position on this question. First, because of the uncertainty in this and other circuits about whether a limitation of liability clause can properly be considered at the Rule 12(b)(1) stage, Closure Title cannot meet its "heavy burden" of showing "to a legal certainty" that the Agreement's limitation of liability clauses prevent Stewart Title from recovering the damages amount claimed. *JTH Tax, Inc.,* 624 F.3d at 638. Second, even assuming that the Agreement's limitation of liability clauses can properly be considered at the Rule 12(b)(1) stage, Closure Title fails to show to a legal certainty that these clauses apply to Stewart Title's claims. The limitation of liability clauses explicitly state that the $2,500-per-claim cap does not apply where there is a loss due to Closure Title's "negligence." (Dkt. 1-2 at 4). While the complaint does not explicitly allege "negligence" by name, it plainly alleges nonconformity with industry standards. The Agreement itself does not define the word "negligence," and at least one district court interpreting a similar contract construed the term to encompass failure to "exercise due care" or meet "the standard of practice in a particular profession or industry." *Stewart Title Guar. Co. v. Metro National Title*, No. 2:04-cv-01191, 2007 WL 922895, at *3 (D. Ut. Mar. 23, 2007). If negligence is so defined, Stewart Title has plainly alleged negligence such that the Agreement's limitation of liability clauses would not apply. (Complaint ¶ 59(e)).

In sum, Closure Title fails to shoulder its "heavy burden" of demonstrating "to a legal certainty" that the Agreement's limitation of liability clauses prevent Stewart Title from recovering more than $2,500 per claim. *JTH Tax,* 624 F.3d at 638.

8

## 2. Voluntary Payment Doctrine

Closure Title next argues that Stewart Title cannot recover the funds it expended for attorneys' fees and settlement of the Albemarle County litigation because these funds were expended voluntarily. (Dkt. 17 at 5–7).

Under Virginia's "voluntary payment doctrine," when a party "pays an illegal demand" without an "immediate and urgent necessity," such a payment "must be deemed voluntary, and cannot be recovered back." *D.R. Horton, Inc. v. Bd. of Sup'rs for Warren Co.*, 737 S.E.2d 886, 888 (Va. 2013). An "illegal demand" need not be literally unlawful but comprises any "demand unjustly made." *Williams v. Consolvo*, 379 S.E.2d 333, 336 (Va. 1989). "All payments are presumed to be voluntary" until the plaintiff "show[s] that its payment was not voluntary." *D.R. Horton*, 737 S.E.2d at 888. To establish the "requisite necessity to pay an unlawful demand, a plaintiff must prove that it did not have time and opportunity to relieve itself of its predicament by resorting to legal methods." *Id.* at 889.

Other district courts have addressed Virginia's voluntary payment doctrine at the motion to dismiss stage. *See, e.g., Capetta v. GC Servs. Ltd. P'ship*, 654 F.Supp.2d 453, 464 (E.D. Va. 2009) (noting that the doctrine could present jurisdictional concerns if plaintiff claimed diversity jurisdiction); *Sentara Hosps. v. Maxim Healthcare Servs., Inc.*, No. 2:07-cv-1, 2007 WL 1071983, at *4 (E.D. Va. Mar. 30, 2007) (holding that the doctrine did not apply where the underlying contract obligated defendant to indemnify plaintiff). At least one court in this district has held that the voluntary payment doctrine is an "affirmative defense" that should not be considered at the motion to dismiss stage unless "the face of the complaint clearly reveals" that the voluntary payment defense is "meritorious." *Bova v. Cox Commc'ns., Inc.*, No. 7:01-cv-

00090, 2002 WL 389264, at *3 (W.D. Va. Mar. 12, 2002) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) for this proposition).

Closure Title argues that Stewart Title was "mere[ly] volunteer[ing]" to fund the Albemarle County litigation on Friendly Rehab's behalf since "[a]ny demand" by Friendly Rehab "would have been unjustly and wrongly made." (Dkt. 17 at 6). This is so, Closure Title contends, because (1) Friendly Rehab's lawyers committed the scrivener's error resulting in the deed defects, and (2) the title policy issued to Friendly Rehab by Stewart Title[5] explicitly states that Stewart Title will not insure Friendly Rehab for losses sustained from "defects . . . or other matters . . . created, suffered, assumed, or agreed to" by Friendly Rehab. (*Id.*; dkt. 1-4 at 2). Thus, Closure Title argues Stewart Title was "under no compulsion to pay any money to or on behalf of Friendly Rehab" in connection with the Albemarle County litigation and is not now "entitled to recover back any money paid." (Dkt. 17 at 6).

This argument fails. As Stewart Title asserts, the exclusion in the policy Stewart Title issued to Friendly Rehab for defects "created, suffered, assumed or agreed to" by the insured is a standard "Exclusion 3(a)" provision found in many title insurance contracts. (Dkt. 24-2 at 3–4). At least three federal circuits—the Fifth, Seventh, and Eighth Circuits—have held that title insurers cannot invoke an "Exclusion 3(a)" to deny coverage unless the insured's conduct causing the loss was knowing or intentional.[6] Under this view of Exclusion 3(a) provisions, a

---

[5] This title policy was attached to the complaint. (Dkt. 1-4).

[6] *See, e.g., Captiva Lake Invs., LLC v. Fidelity Nat'l Title Ins. Co.*, 883 F.3d 1038, 1046–47 (8th Cir. 2018) ("[T]o give the exclusion meaning, most courts imply a fault requirement."); *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 732–33 (7th Cir. 2012) ("The clear majority view . . . is that [Exclusion 3(a)] applies only to intentional misconduct, breach of duty, or otherwise inequitable dealings by the insured."); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 867 (5th Cir. 2014) (noting same majority interpretation of

title insurer cannot deny coverage under an "Exclusion 3(a)" for defects caused by the insured's negligent or unknowing conduct.

Neither the Fourth Circuit nor the Supreme Court of Virginia has squarely addressed how courts should interpret "Exclusion 3(a)" provisions. But the Fourth Circuit has intimated in an unpublished opinion that it would join the majority view that defects caused by the insured's mere negligence are not sufficient to trigger an Exclusion 3(a) provision. *Murnan Spring Hill Trust v. Stewart Title Guar. Co.*, 374 F. App'x 459, 461 (4th Cir. 2010) (citing Sixth Circuit for view that term "suffered" in Exclusion 3(a) provision requires that the insured had "power to prohibit or prevent the claim from arising"). And at least one district court in the Fourth Circuit has adopted the majority view. *See Griffin v. Chicago Title Ins. Co.,* No. AAW-09-1759, 2010 WL 1141205, at *5 (D. Md. Mar. 19, 2010); *Mercantile-Safe Deposit & Trust Co. v. Chicago Title Ins. Co.*, No. CCB-05-2217, 2007 WL 892103, at *8 (D. Md. Mar. 20, 2007).

Stewart Title contends that, under the majority view of Exclusion 3(a) provisions, it was obligated to insure Friendly Rehab for the Albemarle County litigation because the title defects at the heart of that litigation did not stem from Friendly Rehab's knowing or intentional misconduct but rather from the negligence of Friendly Rehab's attorneys. (Dkt. 24-2 at 4). Thus, Stewart Title argues that Friendly Rehab's demand for coverage was not "illegal" or "unjust," and Stewart Title's funding of a settlement and attorneys' fees was involuntary.

As Stewart Title argues, there is "no basis to assume that Virginia [courts] would not follow" the majority view that an insured's mere negligence is insufficient to exclude coverage under an Exclusion 3(a) provision. (*Id.* at 5). Thus, it is far from legally certain that Stewart Title's funding of the Albemarle County litigation was voluntary, and, by extension, that

---

Exclusion 3(a) provisions); *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784 (6th Cir. 1986) (same).

Virginia's voluntary payment doctrine precludes Stewart Title from recovering the $192,786.98 it allegedly expended in connection with that litigation.

In sum, Closure Title fails to establish, to the point of legal certainty, that either the Agreement's limitation of liability clauses or Virginia's voluntary payment doctrine precludes Stewart Title from recovering damages in excess of $75,000. *JTH Tax,* 624 F.3d at 638. Accepting Stewart Title's good-faith claim for $192,786.98 in damages, the Court finds that the amount in controversy is sufficient for the Court to exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See Dart Cherokee Basin Operating Co.,* 135 S.Ct. at 553 (noting that "plaintiff's amount-in-controversy allegation" must be "accepted if made in good faith"). Accordingly, the Court will deny the motion to dismiss under Rule 12(b)(1).

### B. Rule 12(b)(6) – Whether Stewart Title States a Claim for Breach of Contract

Closure Title also moves to dismiss under Rule 12(b)(6), arguing that Stewart Title fails to state a claim for breach of contract under Virginia law. Specifically, Closure Title argues that Stewart Title fails to allege breach of any duty specified under the Agreement, which, in Closure Title's view, imposes no duty to inspect deeds of trust for scrivener's errors. (Dkt. 7 at 7–8).

"Under Virginia law, the essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff." *Albanese v. WCI Communities, Inc.,* 530 F.Supp.2d 752, 760 (E.D. Va. 2007). *See also Wood*, 872 F.Supp.2d at 481 (citing *Ulloa v. QSP, Inc.*, 271 Va. 72, 79 (2006) for same elements).

Here, Stewart Title alleges sufficient factual allegations to plausibly state a claim for breach of contract. Stewart Title alleges, and Closure Title does not dispute, that the Agreement constitutes a "valid and enforceable contract between Stewart Title and Closure Title."

12

(Complaint ¶ 57). Stewart Title further alleges that the Agreement imposes certain legal duties on Closure Title, including the duty to issue "title policies according to recognized underwriting practices"; and to issue "title policies which correctly reflect the status of title" with "appropriate exceptions for liens, defects, [and] encumbrances." (*Id*. ¶ 58(a)-(b); dkt. 1-2 at 1–2, 4). Stewart Title further asserts that Closure Title breached these duties by (1) issuing title policies for the C3 and C6 lots in which the owner of each lot was not the same entity listed in the deed of trust as the entity granting a lien; (2) recording these deeds "in the name of a grantor (JB Rivers) [who] was not the owner" of the lots; (3) failing to conform with "recognized underwriting practices" when issuing the Lot C3 and Lot C6 policies; and (4) failing to "make a reasonable inquiry into the status of title and the *bona fides*" of the deeds of trust for each lot. (Complaint ¶ 59(a)-(g)). Lastly, Stewart Title alleges that Closure Title's issuance of title policies where the underlying deeds contained defects caused "actual and compensable damages," namely the "cost of defending Friendly Rehab's title" in the Albemarle County litigation. (*Id*. at 60). These factual allegations are sufficiently specific and plausible to state a claim for breach of contract under Virginia law. *Albanese*, 530 F.Supp.2d at 760.

Closure Title raises three arguments to the contrary, all of which are without merit. First, Closure Title argues that Section 5 of the Agreement limits Stewart Title's ability to recover to five specific categories of losses attributable to Closure's intentional acts, fraud, or negligence but imposes no duty on Closure Title to "second guess" deeds prepared by outside counsel. (Dkt. 7 at 7). But Stewart Title alleges facts that would appear to constitute a breach of at least two of the duties listed in Section 5: losses stemming from "failure to follow underwriting guidelines and/or instructions" of Stewart Title, and losses stemming from "failure to prepare a title policy which shows defects and matters affecting title disclosed in the title search or which

should have been disclosed in the title search." (Dkt. 1-2 at 4). Additionally, Section 5 of the Agreement expressly states that the losses Stewart Title can recover for "include" but "are not limited to" the five enumerated categories. (*Id.*). Thus, Stewart Title can at least arguably recover for losses stemming from breaches of duties listed in Section 3(a)-(b) of the Agreement.

Second, Closure Title argues that the breach Stewart Title alleges is attributable only to Friendly Rehab's attorneys who committed the scrivener's errors when compiling the deeds of trust. (Dkt. 17 at 2 ("Neither Closure Title nor any of its agents or employees drafted the deed of trust, or had any duty to oversee the work of the attorney drafter.")). But Stewart Title nowhere alleges that Closure Title should have micromanaged the attorneys drafting the deeds of trust—rather, Stewart Title alleges that Closure Title was under a duty not to issue a lender's title policy without scrutinizing the underlying deeds for obvious errors, and that Closure should have followed industry standards by undertaking a "reasonable inquiry into the status of title." (Complaint ¶ 59). That the attorneys who committed the underlying scrivener's errors may also have been negligent does not immunize Closure Title from breach of contract claims stemming from its own alleged negligence in failing to spot those errors before issuing the title policies.

Third, Closure Title argues that Stewart Title does not provide sufficient factual details about the customary "underwriting practices" and "rules and instructions" it allegedly failed to comply with. (Dkt. 17 at 3). Closure Title is correct that the complaint does not spell out exactly what "underwriting practices" Closure Title breached. However, the complaint does assert that Closure Title issued a lender's title policy for both lots where the entity listed as owner did not match the entity listed on the deed of trust, and failed to "make a reasonable inquiry into the status of title and the *bona fides* of the" deeds of trust. (Complaint ¶ 59(a), (g)). The Court can reasonably infer that these are the sort of industry-specific "underwriting practices" Closure Title

allegedly should have observed. *See Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 580 (4th Cir. 2017) (noting that a district court must make "all reasonable inferences" in favor of the non-movant). Moreover, even if the complaint lacks sufficient detail regarding this particular duty, it contains sufficiently specific factual allegations about other duties imposed by the Agreement, such as Closure's duty to issue title policies that "correctly reflect the status of title" with "appropriate exceptions as to liens, defects, [and] encumbrances." (Complaint ¶ 58(b); dkt. 1-1 at 1–2).

In sum, Stewart Title has pled sufficient factual allegations to state a breach of contract claim under Virginia law. Closure Title's motion to dismiss under Rule 12(b)(6) will be denied.

### IV. CONCLUSION

For the foregoing reasons, Closure Title's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) will be denied. An accompanying order will issue.

Entered this  3rd  day of January, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE